**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ENVIRONMENTAL INTEGRITY PROJECT, et al., )<br><br>*Plaintiffs*, )<br><br>v. )<br><br>SCOTT PRUITT, Administrator, U.S. Environmental Protection Agency, )<br><br>*Defendant*. ) | Civil Action No. 1:17-cv-1439-ABJ<br><br>JUDGE AMY BERMAN JACKSON |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATUTORY AND REGULATORY BACKGROUND ........................................................ 2

I.      Title V Operating Permits are the Primary Method for Enforcing and Assuring
        Compliance with the Clean Air Act's Pollution Control Requirements for
        Major Sources ........................................................................................................... 2

II.     The Clean Air Act Establishes a Process with Clear Deadlines to Ensure Prompt
        Resolution of Disputes about which Requirements Apply to a Major Source of Air
        Pollution ................................................................................................................... 5

STATEMENT OF BACKGROUND AND MATERIAL FACTS AS TO WHICH THERE IS
NO GENUINE ISSUE ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 8

I.      The Administrator Failed to Satisfy His Nondiscretionary Duty to Grant or Deny
        Plaintiffs' Title V Petitions ....................................................................................... 8

II.     The Appropriate Remedy Is for the Court to Order the Administrator to Perform His
        Non-Discretionary Statutory Duty by March 1, 2018 ....................................... 9

        A.      The Administrator's Failure to Respond to Title V Petitions is a Product of
                Neglect and Plaintiffs' Proposed Response Deadline is Reasonable .................. 10

        B.      The Administrator's Delay Matters Because Plaintiffs' Petitions do Not Stay
                the Effect of Deficient Title V Permits ................................................................ 14

III.    Plaintiffs Have Standing to Bring This Suit .................................................... 15

        A.      Plaintiffs Satisfy the Requirements for Associational Standing .......................... 16

        B.      Plaintiffs Satisfy the Requirements for Organizational Standing ........................ 19

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Avenal Power Ctr. v. EPA*,
    787 F.Supp.2d 1 (D.D.C. 2011) ............................................................................. 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................. 8

*Defenders of Wildlife v. Gutierrez*,
    532 F.3d 913 (D.C. Cir. 2008) .......................................................................... 18

*Envtl. Def. v. Leavitt*,
    329 F. Supp. 2d 55 (D.D.C. 2004) .................................................................... 9

*Friends of the Earth v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000) ........................................................................................... 16

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................................... 16

*Hunt v. Wash. St. Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ........................................................................................... 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................... 18

*Nat'l Parks Conservation Ass'n. v. Manson*,
    414 F.3d 1 (D.C. Cir. 2005) .............................................................................. 18

*Nat'l Taxpayers Union, Inc. v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995) .......................................................................... 16

*Natural Res. Def. Council v. Train*,
    510 F.2d 692 (D.C. Cir. 1974) .......................................................................... 9

*Romoland School District v. Inland Empire Energy Center*,
    548 F.3d 738, 755 (9th Cir. 2008) .................................................................... 4

*Rumsfeld v. Forum for Acad. And Inst. Rights*,
    547 U.S. 47 (2006) ............................................................................................. 17

*Sierra Club v. Energy Future Holdings*,
    2014 WL 12539733 (W.D. Tex. 2014) ............................................................. 21

*Sierra Club v. Energy Future Holdings*,
2014 WL 2153913 (W.D. Tex. 2014) ................................................................ 21

*Sierra Club v. EPA*,
536 F.3d 673 (D.C. Cir. 2008) ............................................................................ 3

*Sierra Club v. EPA*,
699 F.3d 530 (D.C. Cir. 2012) .......................................................................... 17

*Sierra Club v. Gorsuch*,
551 F.Supp. 785 (N.D. Cal. 1982) .................................................................... 10

*Sierra Club v. Johnson*,
444 F.Supp.2d 46 (D.D.C. 2006) .................................................................. 9, 10

*Sierra Club v. Otter Tail*,
615 F.3d 1008 (8th Cir. 2010) ......................................................................... 3, 4

*Sugar Cane Growers Co-op of Fla. v. Veneman*,
289 F.3d 89 (D.C. Cir. 2002) ........................................................................... 18

*Tex. Campaign for the Env't v. Lower Colo. River Auth.*,
2012 WL 1067211 (S.D. Tex. 2012) ................................................................ 21

*United States v. EME Homer City*,
727 F.3d 274 (3d Cir. 2013) ............................................................................... 6

*Virginia v. Browner*,
80 F.3d 869 (4th Cir. 1996) ................................................................................ 3

**Statutes**

42 U.S.C. § 7401 ................................................................................................ 18

42 U.S.C. § 7410 ................................................................................................ 15

42 U.S.C. § 7604 ................................................................................................ 16

42 U.S.C. § 7661a ............................................................................................... 2

42 U.S.C. § 7661b ............................................................................................. 13

42 U.S.C. § 7661c ............................................................................................... 3

42 U.S.C. § 7661d ...................................................................................... passim

iii

**Rules and Regulations**

40 C.F.R. § 70.2 ................................................................................................................... 2

40 C.F.R. § 70.6 ................................................................................................................... 3

40 C.F.R. § 70.8 ................................................................................................................. 11

EPA, *Operating Permit Program*, 57 Fed. Reg. 32250 (July 21, 1992) .................................. 2, 18

EPA, Revisions to the Petition Provisions of the Title V Permitting Program,
    Proposed Rule, 81 Fed. Reg. 57822 (Aug. 24, 2016). ........................................................... 11

Fed. R. Civ. P. 56. ................................................................................................................ 8

**Other Authorities**

Congressional Research Service, "Clean Air Act Permitting: Implementation and Issues,"
    (Sep. 2016), *available at* https://fas.org/sgp/crs/misc/RL33632.pdf ....................................... 12

*In the Matter of Southwestern Power Company*, *H.W. Pirkey Power Plant*,
    Order on Petition No. VI-2014-01 ........................................................................................ 15

## INTRODUCTION

Environmental Integrity Project (EIP), Sierra Club, Air Alliance Houston, and Texas Environmental Justice Advocacy Services (TEJAS) (collectively, "Plaintiffs") have filed five petitions requesting that the Administrator of the United States Environmental Protection Agency (hereinafter, "Administrator") object to permits issued by the Texas Commission on Environmental Quality (TCEQ) authorizing operation of some of the largest industrial sources of air pollution in the country.  The challenged permits, which were issued under Title V of the Clean Air Act ("Act") and are referred to as "Title V permits," should contain all federally-enforceable air pollution control requirements that apply to the permitted sources.  Plaintiffs' petitions detail numerous deficiencies, including improper exemptions from pollution control requirements, omitted emission limits, and the lack of monitoring to assure compliance with air pollution limits.  These deficiencies deprive those who live and work near the permitted sources of public health protections guaranteed by the Clean Air Act.

Members of the public have the right to petition the Administrator to object to Title V permits that undermine applicable pollution control requirements.  To ensure that the EPA promptly evaluates and, if necessary, objects to deficiencies identified in Title V petitions, Congress required the Administrator to grant or deny each Title V petition within 60 days of receipt.  Though the Administrator's 60-day response deadline for each of Plaintiffs' petitions passed long ago, he has yet to grant or deny any of them.  To ensure that they are not indefinitely deprived of protections guaranteed by the Act, Plaintiffs move for summary judgment and seek a declaration that the Administrator has violated the Act by failing to perform his nondiscretionary duty to grant or deny Plaintiffs' petitions.  Further, this Motion seeks an order compelling

Defendant to perform his mandatory duty to grant or deny each of the five petitions by March 1, 2018.

The five petitions at issue in this action and the Administrator's deadline to respond to each petition are listed below in *Table 1*:

**Table 1: Petitions to Object Filed by Plaintiffs**

| Permit Number | Facility | Date Plaintiffs Filed Petition | EPA's Statutory 60-Day Response Deadline | Days Overdue (As of 11/3/2017) |
|---|---|---|---|---|
| O1553 | ExxonMobil Baytown Olefins Plant | August 8, 2016 | October 7, 2016 | 392 |
| O1229 | ExxonMobil Baytown Refinery | September 26, 2016 | November 25, 2016 | 343 |
| O3711 | Petrobras Pasadena Refinery | November 8, 2016 | January 7, 2017 | 300 |
| O26 | Southwestern Electric Power Company Welsh Power Plant | November 8, 2016 | January 7, 2017 | 300 |
| O1386 | Motiva Enterprises Port Arthur Refinery | December 20, 2016 | February 18, 2017 | 258 |

## STATUTORY AND REGULATORY BACKGROUND

**I.** **Title V Operating Permits are the Primary Method for Enforcing and Assuring Compliance with the Clean Air Act's Pollution Control Requirements for Major Sources**

Title V permits are the primary method for enforcing and assuring compliance with the Clean Air Act's pollution control requirements for major sources of air pollution. *See* EPA, Operating Permit Program, 57 Fed. Reg. 32250, 32258-59 (July 21, 1992). Each major source of air pollution must obtain a Title V permit and may not operate "except in compliance with a permit issued by a permitting authority" under Title V of the Act. [1] 42 U.S.C. § 7661a(a). Each Title V

---

[1] The Title V "major source" thresholds are listed at 40 C.F.R. § 70.2.

permit must list all applicable federally-enforceable pollution control requirements that apply to the permitted source and establish monitoring provisions that assure compliance with these requirements.  42 U.S.C. § 7661c(a), (c) ; 40 C.F.R. § 70.6(a), (c) ; *Virginia v. Browner*, 80 F.3d 869, 873 (4th Cir. 1996) ("The permit is crucial to implementation of the Act:  it contains, in a single, comprehensive set of documents, all [Clean Air Act] requirements relevant to the particular source."); *Sierra Club v. EPA*, 536 F.3d 673, 674-75 (D.C. Cir. 2008) ("But Title V did more than require the compilation in a single document of existing applicable emission limits . . . . It also mandated that each permit . . . shall set forth monitoring requirements to assure compliance with the permit terms and conditions.").

Though each Title V permit is supposed to contain a comprehensive list of requirements that apply to a particular source, Congress did not intend that incidental omissions from a Title V permit should relieve the permitted source of its obligation to comply with all applicable requirements.  Instead, the Act's limited "permit shield" provision "provides that compliance with its Title V permit can provide an operator with a defense to a claim that certain [Clean Air Act] provisions are applicable, *but only* if 'the permitting authority . . . makes a determination . . . that such other provisions . . . are not applicable and the permit includes the determination or a concise summary thereof." *Sierra Club v. Otter Tail*, 615 F.3d 1008, 1022 (8th Cir. 2010) (citing 42 U.S.C. § 7661c(f)) (emphasis added); *see also* 40 C.F.R. § 70.6(f).  Thus, a Title V permit's failure to list a requirement as applicable does not serve as a shield against liability for violations of that requirement, unless the permit contains an express determination that the requirement is inapplicable.

Despite Title V's narrow permit shield provision, courts have found authority elsewhere in the Act to dismiss suits to enforce *any* requirement omitted from a Title V permit.  Specifically,

3

42 U.S.C. § 7607(b)(2) states that "[a]ction of the Administrator with respect to which review could have been obtained . . . shall not be subject to judicial review in civil or criminal proceedings for enforcement." *See, e.g., Otter Tail,* 615 F.3d at 1022-23 (holding that, to the extent that Title V's permit shield provision at 42 U.S.C. § 7661c(f) and § 7607(b)(2) are in tension, the jurisdictional limit in § 7607(b)(2) controls). This prohibition on judicial review of the Administrator's actions in enforcement cases is only relevant, because Title V allows members of the public to petition the Administrator to object to deficient Title V permits and to seek judicial review of the Administrator's decision to deny a Title V petition under 42 U.S.C. § 7607. 42 U.S.C. § 7661d(b)(2).

Thus, some courts have denied claims to enforce applicable requirements that were improperly omitted from a source's Title V permit, ruling that the deficient permit should have been challenged through the Title V petition process. *See Romoland School District v. Inland Empire Energy Center*, 548 F.3d 738, 755 (9th Cir. 2008) ("This use it or lose it provision of 42 U.S.C. § 7607(b)(2) does not bar enforcement proceedings only where an individual has taken advantage of the opportunity to petition the EPA Administrator and then appeals the denial of such a petition to the applicable appellate court; instead, judicial review through civil or criminal enforcement proceedings is unavailable whenever an individual could have obtained such review.") (internal quotation marks omitted); *Otter Tail*, 615 F.3d at 1023 ("We conclude that because Sierra Club could have obtained judicial review of its [New Source Performance Standard] claim through the process established by 42 U.S.C. § 7661d, district court review of that claim is foreclosed by § 7607(b)(2).").

Because members of the public cannot enforce requirements improperly omitted from a Title V permit until the permit is corrected through the Title V petition process, the Administrator's

failure to respond to Title V petitions undermines the ability of those harmed by illegal air pollution released by the largest industrial sources of air pollution to enforce requirements established to protect their health.

## II.   The Clean Air Act Establishes a Process with Clear Deadlines to Ensure Prompt Resolution of Disputes about which Requirements Apply to a Major Source of Air Pollution

The Title V permitting process provides for public participation whenever a Title V permit is issued, revised, or renewed.  In most states, a state permitting authority is responsible for issuing Title V permits.  Groups and individuals may file comments with the state permitting authority concerning new, renewed, or revised Title V permits.  42 U.S.C. § 7661a(b)(6), (7).  If the state permitting authority fails to correct deficiencies identified during the public comment process and EPA declines to object to the permit, "any person" may petition the Administrator to object to the state's permitting decision.  42 U.S.C. § 7661d(b)(2).

To prevent deficient Title V permits from depriving the public of applicable protections for an unreasonable amount of time, the Act establishes clear deadlines for the Administrator to respond to public petitions and, in cases where the Administrator grants a petition, for state permitting authorities to resolve permit deficiencies:  The Administrator must grant or deny a Title V petition within 60 days of receipt.  *Id*.  If the Administrator grants a Title V petition, the state permitting agency must revise the deficient permit to address the Administrator's objection within 90 days.  42 U.S.C. § 7661d(b)(3), (c).  If the state permitting agency fails to timely correct deficiencies identified by the Administrator, the Administrator must take over the permitting process and fix the permit himself.  42 U.S.C. § 7661d(c).

Title V petitions do not postpone the effectiveness of an issued permit, 42 U.S.C. § 7661d(b)(2), and even clearly deficient Title V permits may shield operators from non-compliance

with otherwise-applicable requirements.  *See, e.g., United States v. EME Homer City*, 727 F.3d 274, 297-98 (3d Cir. 2013) (holding that 42 U.S.C. § 7607(b)(2) "divests the District Court of jurisdiction over the EPA's collateral challenges to the . . . Current Owners' permit.").

## STATEMENT OF BACKGROUND AND MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

### ExxonMobil's Baytown Olefins Plant

On August 8, 2016, Plaintiffs timely filed a petition asking EPA to object to the ExxonMobil Baytown Olefins Plant Title V operating permit ("Baytown Olefins Plant Petition"). (Pls. First Consolidated Am. Compl. ¶ 26); (Def. Ans. ¶ 26).  The Administrator has not yet responded to the Baytown Olefins Plant Petition, though he received the petition more than 60 days ago.  (Pls. First Consolidated Am. Compl. ¶ 27); (Def. Ans. ¶ 27); Declaration of Gabriel Clark-Leach ("Clark-Leach Decl.") at ¶ 15.  On November 10, 2016, EIP, Sierra Club, and Air Alliance Houston sent the EPA Administrator notice of their intent to sue for EPA's failure to grant or deny the Petition within 60 days.  (Pls. First Consolidated Am. Compl. ¶ 28); (Def. Ans. ¶ 28).

### ExxonMobil's Baytown Refinery

On September 26, 2016, EIP, Sierra Club, and Air Alliance Houston timely filed a petition asking EPA to object to the ExxonMobil Baytown Refinery Title V operating permit ("Baytown Refinery Petition").  (Pls. First Consolidated Am. Compl. ¶ 33); (Def. Ans. ¶ 33).  The Administrator has not yet responded to the Baytown Refinery Petition, though he received the petition more than 60 days ago.  (Pls. First Consolidated Am. Compl. ¶ 34); (Def. Ans. ¶ 34); Clark-Leach Decl. at ¶ 15.  On February 10, 2017, EIP, Sierra Club, and Air Alliance Houston sent

the EPA Administrator notice of their intent to sue for her failure to grant or deny the Baytown Refinery Petition within 60 days.  (Pls. First Consolidated Am. Compl. ¶ 35); (Def. Ans. ¶ 35).

Motiva Enterprises LLC's Port Arthur Refinery

On, December 20, 2016, EIP, Sierra Club, and Air Alliance Houston timely filed a petition asking EPA to object to the Port Arthur Refinery Title V operating permit ("Port Arthur Refinery Petition").  (Pls. First Consolidated Am. Compl. ¶ 49); (Def. Ans. ¶ 49).  The Administrator has not yet responded to the Port Arthur Refinery Petition, though he received the petition more than 60 days ago.  (Pls. First Consolidated Am. Compl. ¶ 50); (Def. Ans. ¶ 50); Clark-Leach Decl. at ¶ 15.  On February 22, 2017, EIP, Sierra Club, and Air Alliance Houston sent the Administrator notice of their intent to sue for his failure to grant or deny the Port Arthur Refinery Petition within 60 days.  (Pls. First Consolidated Am. Compl. ¶ 51); (Def. Ans. ¶ 51).

Petrobras's Pasadena Refinery

On November 8, 2016, EIP, Sierra Club, Air Alliance Houston, and TEJAS timely filed a petition asking EPA to object to the Pasadena Refinery Title V operating permit ("Pasadena Refinery Petition").  (Pls. First Consolidated Am. Compl. ¶ 41); (Def. Ans. ¶ 41).  The Administrator has not yet responded to the Pasadena Refinery Petition, though he received the petition more than 60 days ago.  (Pls. First Consolidated Am. Compl. ¶ 42); (Def. Ans. ¶ 42); Clark-Leach Decl. at ¶ 15.  On February 14, 2017, EIP, Sierra Club, Air Alliance Houston, and TEJAS sent the EPA Administrator notice of their intent to sue for her failure to grant or deny the Pasadena Refinery Petition within 60 days.  (Pls. First Consolidated Am. Compl. ¶ 43); (Def. Ans. ¶ 43).

<u>Southwestern Electric Power Company's Welsh Power Plant</u>

On November 8, 2016, EIP and Sierra Club timely filed a petition asking EPA to object to the Welsh Power Plant Title V operating permit ("Welsh Petition").  (Pls. First Consolidated Am. Compl. ¶ 56); (Def. Ans. ¶ 56).  The Administrator has not yet responded to the Welsh Petition, though he received the petition more than 60 days ago.  (Pls. First Consolidated Am. Compl. ¶ 57); (Def. Ans. ¶ 57); Clark-Leach Decl. at ¶ 15.  On February 1, 2017, EIP and Sierra Club sent the EPA Administrator notice of their intent to sue for her failure to grant or deny the Welsh Petition within 60 days.  (Pls. First Consolidated Am. Compl. ¶ 58); (Def. Ans. ¶ 58).

## ARGUMENT

Summary judgment must be granted when, viewing the facts in the light most favorable to the nonmoving party, the records "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to cite "specific facts showing that there is a genuine issue for trial."  *Celotex Corp*., 477 U.S. at 324; Fed. R. Civ. P. 56(c)(1)(A).

Here, summary judgment is appropriate because there can be no dispute that the Administrator missed his statutory deadline to respond to Plaintiffs' Title V petitions or that Plaintiffs' requested remedy is reasonable and consistent with deadlines imposed by the Clean Air Act.

## I.     The Administrator Failed to Satisfy His Nondiscretionary Duty to Grant or Deny Plaintiffs' Title V Petitions

The Administrator's duty to grant or deny a Title V petition is nondiscretionary:  "The Administrator *shall* grant or deny such petition within 60 days after the petition is filed." 42 U.S.C. § 7661d(b)(2) (emphasis added).  The inclusion of an express deadline makes the statutory duty

nondiscretionary.  *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) ("Express deadlines in the [Clean Air Act] typically create nondiscretionary duties to act.") (citation omitted); *see also Avenal Power Ctr. v. EPA*, 787 F.Supp.2d 1, 4 (D.D.C. 2011) (holding that a clear and unambiguous statutory deadline set forth in the Clean Air Act by Congress cannot be "overridden by a regulatory process created for the convenience of an [EPA] Administrator[.]").

Approximately one year and three months have passed since the Administrator received the first of the five petitions addressed by this action and nearly ten months have passed since the Administrator received the last of the five petitions.  The Administrator has not granted or denied any of Plaintiffs' Title V petitions.  (Pls. First Consolidated Am. Compl. ¶ 8); (Def. Ans. ¶ 8); Clark-Leach Decl. at ¶ 15.  Thus, summary judgment for Plaintiffs is warranted as a matter of law, because there can be no genuine dispute that the Administrator failed to grant or deny each of Plaintiffs' Title V petitions within 60 days, as required by the Act.

## II.   The Appropriate Remedy Is for the Court to Order the Administrator to Perform His Non-Discretionary Statutory Duty by March 1, 2018

Once a plaintiff establishes that the Administrator failed to perform a nondiscretionary duty, it is appropriate for the court to fashion a remedy that vindicates the public interest through summary judgment.  *Natural Res. Def. Council v. Train*, 510 F.2d 692, 705 (D.C. Cir. 1974) ("The authority to set enforceable deadlines . . . is an appropriate procedure for the exercise of the court's equity power to vindicate the public interest."); *see also Sierra Club v. Johnson*, 444 F.Supp.2d 46, 52 (D.D.C. 2006) (citing cases holding that courts may exercise equity power to establish deadlines for government action on summary judgment).  In fashioning an appropriate remedy, Congress's intent in establishing a statutory deadline for performance of the nondiscretionary duty "is of utmost importance."  *Sierra Club v. Johnson*, 444 F.Supp.2d at 53 (citing *Natural Res. Def. Council v. Train,* 510 F.2d at 713).

The Administrator's "footdragging" failure to respond to Plaintiffs' Title V petitions threatens to "completely neutralize the mandatory nature of the statutory directive." *Id*. at 53 (quoting *Sierra Club v. Browner*, 130 F.Supp.2d at 95). Accordingly, and as supported below, the court should grant Plaintiffs' Motion for Summary Judgment and direct the Administrator to grant or deny each of Plaintiffs' five Title V petitions by March 1, 2018.

### A.    The Administrator's Failure to Respond to Title V Petitions is a Product of Neglect and Plaintiffs' Proposed Response Deadline is Reasonable

In cases where a federal agency has failed to timely perform a nondiscretionary duty, a court should not afford it additional time to act unless "it is convinced by the official involved that he has in good faith employed the utmost diligence in discharging his statutory responsibilities." *Id*. at 52-53 (citing *Natural Res. Def. Council v. Train*, 510 F.2d at 713) (internal quotation marks omitted). This court must apply the statutory deadline unless EPA demonstrates that, despite the utmost diligence, compliance with the deadline would be impossible for EPA acting in good faith. *See Sierra Club v. Gorsuch*, 551 F.Supp. 785, 787 (N.D. Cal. 1982).

The Administrator has not acted with diligence to address Title V petitions and evidence demonstrates that EPA is fully capable of resolving Title V issues, like those raised by Plaintiffs' petitions, even on a short timetable. Even if, inexplicably, the Administrator has not begun his evaluation of Plaintiffs' petitions at this late date, a deadline of March 1, 2018 would still allow EPA nearly double the Act's 60-day deadline from this point.

### 1.    The Administrator's Title V Petition Response Track Record Demonstrates Complete Disregard for Congress's Mandate

EPA only receives a handful of Title V petitions each year, and EPA's petition review process is not onerous. Moreover, EPA receives the permit and all the background material from the state permitting authorities well before the public's petition period even begins.

10

Of the thousands of draft permits issued by state permitting agencies each year, EPA only receives petitions to object to approximately 20 per year. Clark-Leach Decl. at ¶ 7.  The "length for most petitions is in the range of 20 to 30" pages.  EPA, Revisions to the Petition Provisions of the Title V Permitting Program, Proposed Rule, 81 Fed. Reg. 57822, 57836 (Aug. 24, 2016).  The average length of EPA's Title V petition orders issued since 2012 is only 23 pages, Clark-Leach Decl., Ex. B at ¶ 7, with a significant portion of each order being boilerplate language.  Clark-Leach Decl. at ¶ 11.  When evaluating a Title V petition, neither the Administrator nor EPA staff engage in "extensive fact-finding or investigation," 81 Fed. Reg. at 57829-30, and EPA, as a matter of practice, will deny a petition that requires the Administrator to investigate claims that are not demonstrated within the four corners of a petition.  The Administrator's decision to grant a petition is not subject to appeal.  42 U.S.C. § 7661d(c).[2]

Moreover, state permitting authorities must provide EPA with a copy of each permit application, each proposed permit, and all supporting information at least 105 days before the deadline for filing a public petition can pass.  40 C.F.R. § 70.8(a)(1), (c)(1) (providing that state permitting authorities must submit copies of permit applications and proposed Title V permits to EPA for review and allowing EPA 45 days to object to each proposed permit after the agency receives a proposed permit an all supporting information); §70.8(d)  (providing that members of the public may petition EPA to object to a proposed permit during the 60 day period beginning after the close of EPA's 45-day review period).

Despite the small number of Title V petitions EPA receives each year, the relative lightness of the petition review process, and EPA's access to information about proposed permits well before

---

[2] Note, however, that petitioners may appeal an order *denying* a Title V petition.  42 U.S.C. § 7661d(b)(2).

the public's petition period even begins, the Administrator's track record responding to Title V petitions is abysmal.  The Administrator has not met his deadline to respond to a single Title V petition in the last ten years.  Clark-Leach Decl. at ¶ 8, Ex. A.  EPA's average response time—for the minority of petitions it has resolved over the past five years—is 596 days, or nearly ten times longer than the Act allows.  *Id*.  According to the Congressional Research Service, 30 percent of unanswered petitions have been languishing before EPA for more than a decade.  *See* Congressional Research Service, Clean Air Act Permitting: Implementation and Issues 9, *available at*  https://fas.org/sgp/crs/misc/RL33632.pdf (last visited November 2, 2017).  To put these numbers in context, Title V permits expire and must be renewed every five years.  42 U.S.C. § 7661a(b)(5)(B).

In rare cases where EPA has made its review of Title V permits a priority, history shows that the Agency is capable of evaluating permitting issues and objecting to many different permits in a short window of time.  For example, EPA objected to 43 Texas Title V permits in a single 12-month period beginning on October 30, 2009 and ending on October 30, 2010.  Clark-Leach Decl. at ¶ 10, Ex. C.  This feat is notable, because EPA's objection period to state-issued proposed permits is 45-days—15 days shorter than its response window for Title V petitions—and the agency did not have the benefit of well-developed comments or petitions to aid in its evaluation of the permits.  42 U.S.C. § 7661d(b)(1) and (2) (specifying length of EPA's initial review period and deadline for responding to public petitions).

## 2.  EPA Willfully Ignores Congress's Mandate and Only Answers Petitions When Sued

Part of the problem is that the Administrator appears to be improperly relying on Clean Air Act deadline suits to determine whether and when to respond to Title V petitions.  Of the 46 petitions that EPA did respond to in the past five years, all but seven of the responses were made

*after* petitioners filed a deadline suit to compel the Administrator's response.  Clark-Leach Decl. at ¶ 8, Ex. A.  Of the seven petitions the Administrator answered without being sued, at least one response came only after the petitioners notified the Administrator of their intent to sue him for failing to timely respond to their petition.  *Id.*  According to information available on EPA's Title V Petition Database, it appears that EPA has never made a timely response to a Texas Title V petition, nor has the Administrator ever responded to a Texas Title V petition without being sued by the petitioner for missing his deadline to respond.  Clark-Leach Decl. at ¶ 6.

The Administrator's reliance on the litigation process to drive his responses to Title V petitions is improper, because it ensures that Title V petitions will not only go unanswered after the 60-day period allowed by Congress, but also that petitions will not be answered during the additional 60-day notice period required for deadline suits against the Administrator, and—on average—for another 8 to 14 months after the deadline suit has been filed.  Clark-Leach Decl., Ex. B at ¶ 16.  To put this delay in context, on average, it takes the Administrator longer to grant or deny a Title V petition than the Act allows permitting authorities to review an application and then write and issue a final Title V permit.  *See* 42 U.S.C. § 7661b(c) ("The permitting authority shall approve or disapprove a completed application . . . and shall issue or deny the permit, within 18 months after the date of receipt thereof[.]").

The Administrator's reliance on deadline suits to drive his responses to Title V petitions has the added drawback of requiring EPA's Title V staff to do otherwise unnecessary work defending the Administrator's delay.  As the Director of EPA's Air Quality Policy Division testified in another currently-pending Title V petition deadline suit, deadline suits "are taking up a significant amount of the time of the staff who are responsible for responding to the underlying petitions, in assisting the Department of Justice in preparing responses to complaints and summary

judgment briefing." Clark-Leach Decl., Ex. B at ¶ 18. Over the years, the Administrator's inefficient reliance on litigation to negotiate deadline suit response dates that completely nullify Congress's 60-day deadline is an unmistakable case of "officials . . . seiz[ing] on a remedy made available for extreme illness and promot[ing] it into the daily bread of convenience." *Natural Res. Def. Council*, 510 F.2d at 713. This Court should reject this practice and direct the Administrator to respond to Plaintiffs' petitions by March 1, 2018.

## B.  The Administrator's Delay Matters Because Plaintiffs' Petitions do Not Stay the Effect of Deficient Title V Permits

Each of the challenged permits remains effective while Plaintiffs' petitions await the Administrator's tardy response. 42 U.S.C. § 7661d(b)(2) ("If the permit has been issued by the permitting agency, such petition shall not postpone the effectiveness of the permit."). Each day that the Administrator fails to grant or deny Plaintiffs' petitions is another day that Plaintiffs are deprived of public health protections and rights guaranteed by the Clean Air Act. This delay is particularly egregious because EPA has already addressed many of the deficiencies identified by Plaintiffs' Title V petitions.

For example, the Welsh Power Plant's Title V permit purports to authorize exemptions from certain federal air pollution limits. *See* (Pls. First Consolidated Am. Compl., Ex. E). EPA has already determined that exemptions identical to the exemption in the Welsh Power Plant permit are forbidden by the Act.[3] Thus, even though EPA resolved the substantive question of law

---

[3] *See In the Matter of Southwestern Power Company*, *H.W. Pirkey Power Plant*, Order on Petition No. VI-2014-01 at 11 (February 3, 2016) ("In responding to this objection, the EPA directs the TCEQ to revise Pirkey's 2014 Title V Permit to ensure that it requires that the opacity and PM limits of 30 T.A.C. §§ 111.111(a)(1)(B) and 111.153(b) apply during periods of planned [Maintenance, Startup, and Shutdown]."); *see also* Clark-Leach Decl., Ex. D, Letter from Guy Donaldson, Associate Director, Air Branch, EPA Region 6, Re: Establishing Emission Limitations for Opacity and Particulate Matter from Coal-fired Electric Generating Units (EGUs) Equipped with Electrostatic Precipitators (March 13, 2017) ("However, the EPA interprets the Clean Air

presented by Plaintiffs' Welsh Title V petition nearly a full year before Plaintiffs even filed the petition, the Administrator has refused to respond to the petition almost eleven months after it was filed.

Plaintiffs' Baytown Olefins Plant and Baytown Refinery petitions also raise issues that EPA resolved years ago.  For example, both of these petitions argue that ExxonMobil's Title V permits improperly incorporate state-only Plantwide Applicability Limit permits that purport to modify federal requirements as federally-enforceable authorizations.  (Pls. First Consolidated Am. Compl., Ex. A, Ex. B); Clark-Leach Decl. at ¶ 13.  This is a problem, because state-only orders cannot be used to modify a source's federal obligations.  42 U.S.C. § 7410(i).  EPA recognized this problem in 2012, and sent ExxonMobil two letters informing the company that its Plantwide Applicability Limit permits were state-only permits that could not be used to avoid federal requirements.  Clark-Leach Decl. at ¶ 13, Ex. E, Ex. F.  Thus, even though EPA resolved a central substantive question of law raised by Plaintiffs' Baytown Olefins Plant and Refinery petitions four years before Plaintiffs filed their petitions, the Administrator has refused to answer the petitions.

## III.    Plaintiffs Have Standing to Bring This Suit

Title V of the Act provides that "any person" may petition the Administrator to object to a Title V permit.  42 U.S.C. § 7661d(b)(2).  Likewise, the Act's citizen suit provision states that "any person" may file suit to compel the Administrator to perform a nondiscretionary duty.  42 U.S.C. § 7604(a)(2).  Plaintiffs pass this threshold and thus need only demonstrate the baseline requirements for Constitutional standing to invoke the jurisdiction of this court.

---

Act" to require [state] rules to include emission limitations covering all periods of operation, including periods of startup and shutdown.").

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Under the doctrine of associational standing, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiff organizations may also have standing to seek redress for government conduct that "perceptibly impair[s]" the party's ability to carry out its activities. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (holding that organizational standing is established where conduct directly harms an organization's ability to provide services).

Though all Plaintiffs have standing to challenge the Administrator's failure to respond to their Title V petitions, "the presence of one party with standing is sufficient to satisfy Article III's case-or controversy requirement." *Rumsfeld v. Forum for Acad. And Inst. Rights*, 547 U.S. 47, 52 n.2 (2006).

## A.      Plaintiffs Satisfy the Requirements for Associational Standing

Members and employees of Plaintiff organizations would have standing to sue in their own right.  Individual members and employees are exposed to air pollution from the sources authorized

by the five challenged Title V operating permits identified in Plaintiffs' First Consolidated Amended Complaint.  These individuals suffer concrete injuries resulting from the Administrator's failure to respond to Plaintiffs' Title V petitions because it deprives them of their right to effectively challenge deficient permit terms that fail to adequately protect their health.

Plaintiffs' members and employees live and work near sources authorized by the challenged Title V permits.  *See* Declaration of Karla Land (Land Decl.) at ¶¶ 12, 15-16; Declaration of Neil Carman (Carman Decl.) at ¶¶ 9-10, 13; Declaration of Dr. Bakeyah Nelson (Nelson Decl.) at ¶¶ 6, 9; Declaration of Juan Parras (Parras Decl.) at ¶¶ 4, 6, 8-9.  Plaintiffs' employees and members have been exposed to air pollution from these sources.  Land Decl. at ¶¶ 5, 9, 12-13, 16, 18; Carman Decl. at ¶¶ 11-13, 15-16, Ex. A, Ex. B; Nelson Decl. at ¶¶ 6-9; Parras Decl. at ¶¶ 4, 6-9.  The health of Plaintiffs' members and employees has suffered as a result of their exposure to air pollution from sources authorized by the five challenged Title V permits and Plaintiffs' members and employees limit their time outside to avoid exposure to air pollution emitted from these sources.  Land Decl. at ¶¶ 6, 8, 17; Nelson Decl. at ¶ 9; Parras Decl. at ¶¶ 4, 6.

In cases like this, where plaintiffs allege procedural injuries, standing requirements are relaxed, and courts presume that petitioners will prevail on the merits of their administrative challenges.  *See Sierra Club v. EPA*, 699 F.3d 530, 533 (D.C. Cir. 2012) ("If correct on the merits, as we must assume for standing purposes, such a challenge presents a clearly redressable injury: some Sierra Club members unquestionably live within zone they claim are exposed to § 112(c)(6) HAPs, and our vacatur will require EPA, consistent with the district court's deadline order, to entertain and respond to the Club's claims about the necessary scope and stringency of the standards."); *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 924 (D.C. Cir. 2008) ("[I]n

reviewing the standing question, the court must . . . assume that on the merits the plaintiffs would be successful in their claims.") (citations and quotation marks omitted).

In such cases, the plaintiff need only demonstrate that the procedure at issue protects the plaintiff's interests. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n.8 (1992); *Nat'l Parks Conservation Ass'n. v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005); *Sugar Cane Growers Co-op of Fla. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002) ("A plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure that the substantive result would have been altered. All that is necessary is to show that the procedural step was connected to the substantive result."). The primary purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). The Title V permitting process was established to improve compliance with and enforcement of pollution control requirements designed to protect public health. 57 Fed. Reg. 32251 ("The Title V permit program will enable the source, States, EPA, and the public to understand better the requirements to which the source is subject, and whether the source is meeting those requirements. Increased source accountability and better enforcement should result."). The Title V petition process allows members of the public to identify defects in state-issued permits that compromise the enforceability of public health protections mandated by the Act. 42 U.S.C. § 7661d(b)(2). If a petitioner demonstrates that a permit fails to assure compliance with an applicable pollution control requirement, the Administrator must object to the permit and the permit must be revised to address the defect. *Id.* Thus, the Title V petition process was established to protect the concrete public health interests of all who may be exposed to air pollution emitted by major industrial sources, including Plaintiffs' members and employees.

Here, the Administrator's ongoing failure to grant or deny Plaintiffs' five petitions deprives the Plaintiffs of their procedural right to compel the Administrator to object to permits that render applicable public health protections unenforceable or to judicially challenge the Administrator's determination that Plaintiffs' petitions fail to demonstrate that the challenged permits fall short of what the Clean Air Act requires.

The issue at stake in this action—the proper implementation of the Clean Air Act's Title V permitting program—is central to Plaintiffs' institutional missions.  Clark-Leach Decl. at ¶¶ 2-5; Carman Decl. at ¶¶ 3-8; Nelson Decl. at ¶¶ 4-5; Parras Decl. at ¶¶ 2-3.  Plaintiffs timely filed their comments and identified the permit deficiencies with the state permitting agency (the TCEQ), as required.  (Pls. First Consolidated Am. Compl. ¶¶ 24, 31, 38-39, 46, 54); (Def. Ans. ¶¶ 24, 31, 38-39, 46, 54).  When the TCEQ declined to correct the deficiencies identified in Plaintiffs' public comments, Plaintiffs timely petitioned EPA to object to the Title V permits.   (Pls. First Consolidated Am. Compl. ¶¶ 26, 33, 41, 49, 56); (Def. Ans. ¶¶ 26, 33, 41, 49, 56).

Finally, neither the claims asserted nor the relief requested requires the participation of individual members and employees of the Plaintiff organizations.  The court does not need to consider the circumstances of the individual members and employees of Plaintiff organizations to determine whether the Administrator failed to timely respond to Plaintiffs' Title V petitions or to resolve Plaintiffs' request that the court compel the Administrator to respond to Plaintiffs' Title V petitions by March 1, 2018.

**B.      Plaintiffs Satisfy the Requirements for Organizational Standing**

The Environmental Integrity Project is a non-profit corporation founded to advocate for the effective enforcement of state and federal environmental laws, with a specific focus on the Clean Air Act and large stationary sources of air pollution, like the Baytown Olefins Plant and

Refinery, the Pasadena Refinery, the Port Arthur Refinery, and the Welsh Power Plant. Clark-Leach Decl. at ¶ 2. The Administrator's failure to respond to Plaintiffs' Title V petitions directly harms EIP's ability to provide each of the three main services it provides to further its mission in Texas. *Id.* at ¶ 14. First, and most directly, the Administrator's ongoing failure to respond to Plaintiffs' Title V petitions, hinders the effectiveness of EIP's participation in the Title V permitting process. Because Title V of the Clean Air Act provides a clear and enforceable path for EIP to identify permit terms that undermine the effectiveness of public health protections and to compel either Texas or EPA to correct those terms, EIP has invested a significant amount of time and money developing expertise in Title V permitting issues and working to improve compliance with Clean Air Act requirements on its own behalf and on behalf of others. *Id.* at ¶ 5. The Administrator's failure to respond to Plaintiffs' Title V petitions, as the Act requires him to do, thwarts EIP's ability to compel corrections to deficient permits and threatens to render EIP's allocation of significant resources into permitting projects pointless.

Second, the Administrator's failure to respond to Plaintiffs' petitions impairs EIP's ability to assess source compliance with applicable pollution control requirements and to bring enforcement actions—on its own behalf and on behalf of others—to address violations of public health protections. *Id.* at ¶ 4. Courts in Texas presiding over enforcement cases where EIP provided pro bono representation for plaintiff organizations have been abundantly clear that public health protections omitted from or undermined by a source's Title V permit cannot be enforced in federal court.[4] In response to these judicial rulings, EIP has expended significant resources to

---

[4] *See, e.g., Tex. Campaign for the Env't v. Lower Colo. River Auth.*, 2012 WL 1067211 at *9 (S.D. Tex. 2012) (not reported) ("When EPA failed to object on the basis that the prior permits should have been included as sources of relevant limitations, TCE had the opportunity to petition for an objection, but failed to do so. Therefore, TCE missed its opportunity to obtain review during the administrative procedure, and this court lacks jurisdiction to address TCE's enforcement claims.");

ensure that Title V permit deficiencies are corrected through the permitting process before bringing

suit to enforce requirements previously omitted from a source's Title V permit.  Clark-Leach Decl.

at ¶ 5.  Unfortunately, the Administrator's failure to promptly review and respond to Plaintiffs'

petitions undermines EIP's efforts to follow the advice of federal courts in Texas.  Until the

Administrator grants Plaintiffs' petitions and requires the TCEQ to correct the deficiencies

Plaintiffs have identified or denies the petitions in a final order that Plaintiffs may appeal, Plaintiff

organizations are deprived, not only of the procedural rights under Title V of the Act, but also of

their right to seek enforcement of public health protections guaranteed by the Act in federal court.

Finally, deficiencies identified in Plaintiffs' Title V petitions limit EIP's ability to issue

reports that reliably assess the risk created by air pollution from Texas sources and cast light on

serious violations of pollution control requirements at Texas sources.  *Id.* at ¶ 14.  This is so for

two reasons:  First, Title V permits that fail to mandate reliable pollution monitoring methods limit

available information about the amount of pollution released by Texas sources.  Second, where a

Title V permit fails to clearly identify a requirement as applicable, sources may conclude that the

requirement is inapplicable and decline to report violations of that requirement.  Until the

Administrator grants Plaintiffs' petitions and requires the TCEQ to correct deficiencies identified

in the petitions or denies the petitions in a final appealable order, Plaintiffs are deprived of their

right to challenge permit terms that impede access to reliable information about the amount of air

---

*Sierra Club v. Energy Future Holdings*, 2014 WL 12539733 at *7 (W.D. Tex. 2014) ("[A] concerned citizen is limited to the compliance requirements, as defined in the Title V permit, when pursuing a civil lawsuit for [Clean Air Act] violations."); *Sierra Club v. Energy Future Holdings*, 2014 WL 2153913 at *25 (W.D. Tex. 2014) (not reported) ("As for Sierra Club's request for a civil penalty, a citizen suit seeking civil penalties is mooted by the issuance of a permit that authorizes the activities for which the suit seeks penalties.").

pollution emitted by the permitted sources and violations of applicable requirements that were improperly omitted from the sources' Title V permits.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for summary judgment and find that the Administrator has failed to perform its non-discretionary duty to grant or deny Plaintiffs' five petitions to object to the proposed Title V permits authorizing operation of ExxonMobil's Baytown Olefins Plant and Refinery; Petrobras's Pasadena Refinery; Motiva's Port Arthur Refinery; and SWEPCO's Welsh Power Plant.  Further, Plaintiffs request that the Court order Defendant to perform this mandatory duty by March 1, 2018.

Respectfully submitted this 3rd day of November, 2017.

/s/ *Adam Kron*
ADAM KRON
D.C. Bar No. 992135
Environmental Integrity Project
1000 Vermont Ave. N.W., Suite 1100
Washington, D.C. 20005
Phone: (202) 263-4451
akron@environmentalintegrity.org

*Counsel for Plaintiffs*